## SPENCER et al. v. SULLY COUNTY.

1. JUDICIAL POWERS—NOT VESTED IN COUNTY COMMISSIONERS.
   Under Section 1907, Rev. St. U. S., boards of county commissioners cannot be vested with and cannot exercise any judicial powers.

2.  COUNTY COMMISSIONERS—REJECTION OF CLAIM BY—NO BAR TO ACTION.
     The rejection of a claim against the county by its board of county
     commissioners—no appeal being taken from such action of the board—
     is no bar to an action against the county on such claim in the district
     court.

Filed May 25, 1887.

Appeal from the district court of Sully county.

*Chas. Butts* and *Coe I. Crawford,* for plaintiffs and appellants.

The board of county commissioners are not a court for any purpose, and can exercise no judicial functions or powers whatsoever, and any act of the territorial legislature attempting to confer such powers upon them is in direct conflict with the organic act, and void.   Section 1907 of the Organic Act; Rupert v. Commissioners, 2 Pac. 718; Hedges v. Commissioners, 1 Pac. 748; Fulkerson v. Stevens, 1 Pac. 261; Cartwright v. Bear River A. & W. Co., 30 Cal. 580.

But in any event such jurisdiction could not be exclusively vested in the board of county commissioners.   Smith v. County Mohave, 8 Pac. 160; 1 Iowa (G. Green) 414; 2 Id. 469; 3 Iowa 15 and 380; Wells on Jurisdiction of Courts, Sec. 80, also pages 61, 66 and note, Sec. 154 Id.; Hayes v. McNealy, 16 Fla. 409; State v. Bell, 5 Port. Ala. 377, 630; Perry v. Am. 26 Cal. 377; Henry P. Kidder, ass. etc., Respondent v. Willsam F. Hambom *et al.* Appellants, 72 N. Y. Court of App. 159, also 74 N. Y. Court App. 448; Commonwealth v. Commissioners, 16 Serg. Rawle, 317; Lyons v. Adams, Id. 443; Wilson v. Commissioners 7 Watts and Serg. 197; Paine v. Commissioners Portage County Wright 417; Kellogg v. Supervisors Winnebago County, 42 Wis. 101; Stringham v. Supervisors Winnebago County, 24 Wis. 600, and cases cited; Brady v. Supervisors of N. Y. 2 Sanford (S. C.) 460; same 10 N. Y. 260; Norton v. Supervisors, 13 Wis. 684. Pruden v. Grant Co. 7 Pac. 308.

*Thos. M. Goddard, Dist. Atty.,* for respondent.

The board of county commissioners can and do exercise judicial functions, and the legislature may, and has, conferred such powers upon it, and there is nothing in the organic act which prohibits it.

There can, nowhere in the organic act of the territory, be

found language negativing the power of the legislature to vest judicial powers in other officers, boards, or tribunals than the courts contemplated in said Section 1907.

Legislative acts are *ipso facto* binding unless there can be found in the constitution (organic act) a direct negative and unavoidable estoppel. Herman on Estoppel, p. 151–152; McKenzie v. Ramsey, 1 Bailey (S. C.) 457; Chap. 44, Laws 1883; Code Civ. Proc. §§ 206, 321, 130; Sec. 685, Code Civ. Proc; Sec. 380 Id.; Sec. 23, Chap. 21, Pol. Code; Sec. 87, Chap. 112, Laws 1883; Sec. 88, Id.; 89 Id.; 90 Id., all imply an intention to grant judicial powers to boards, officers and tribunals; Rupert v. Board Co. Commrs., 2 Pac. 718; Fulkerson v. Stevens, 1 Pac. 261; Hedges v. Commissioners, 1 Pac. 748.

Our own supreme court have decided that boards of county commissioners have, and can exercise, judicial powers. In the matter of the opening Gold Street Deadwood v. Newton, 2 Dak. 149; Dixon Co. v. Barnes, 13 N. W. 623; Saving clause and Sec. 89, Chap. 112, Session Laws 1883.

Not only will the courts give to the statute a construction conforming to the constitution if possible, yet when this cannot be done, they will be slow in so construing the constitution itself as to render the enactment void. Bishop on Stat. Cr. S. 91; Bishop on Stat. crimes, Sec. 90; Duncombe v. Prindle, 12 Ia. 1; Caldwell v. Mary's Landing, etc., 4 C. E. Green, p. 245.

McCONNELL, J. This was begun by summons, as an original action in the district court. Appellants were plaintiffs below, and claim in the complaint that the respondent, an organized county in this territory, is indebted to them, on a contract obligation, in the sum of thirteen hundred and fifty dollars.

It appearing from the pleadings that the claim sued on had been presented before the board of commissioners of the county, and payment demanded, and that the board had refused to allow the claim, the district court, on motion of respondent's counsel, dismissed the action,—holding that the district court had no jurisdiction, and that plaintiffs' only remedy lay in appeal from the order of the the board of commissioners disallowing their claim. The action of the district

court in ordering the cause to be dismissed, is assigned as error, and is properly before us for review.

An organized county in this territory is, "a body corporate." As such it may sue and be sued, plead and be impleaded in any court of the territory. Political Code, Sec. 13 of Chap. 21.

The decision of the learned court below affixes to this Section of the statute an important limitation. By holding that what, at common law, (conceding respondent to be a body corporate) would have been an ordinary action *ex contractu*, is de-feated by the fact that prior to the beginning of the action, the plaintiff's claim had been adversely passed upon by the board of commissioners of the defendant county. The learned court holds, in effect, that the decisions of boards of county commissioners in this territory, given upon claims against their respective counties, may be pleaded in bar of subsequent action on such claims, with the force and effect of a final judgment between the same parties upon the same matter, rendered by a court of competent jurisdiction. If this holding be correct, then boards of county commissioners in Dakota have judicial powers; and the liability to be sued in any court of the territory means only an indirect liability by way of appeal from the decisions of such boards, as elsewhere provided in the statutes, —unless the construction intimated by the court in Brady v. Supervisors of New York, 10 N. Y. 260, should be adopted to the effect that "claims for the malfeasance of county officers, and claims for torts, for which a county may be liable," are not proper subjects for the action of the commissioners, but should go directly into the courts.

In construing Sections 87, 88, 89 and 90 of Chapter 112 of the Session Laws of 1883; Sections 46, 47, 48, 49 and 50, of Chapter 21, of the Political Code; Chapter 5 of the Session Laws of 1883 so far as amendatory of said Section 46—being the statutory law cited and relied upon by respondent in support of the decision below.—we shall be aided by considering the constitutional inhibitions pertinent thereto; for the legislature is never presumed to have intended a violation of the constitu-

tion, and of possible or doubtful meanings, that one is adopted by the courts which does not violate the constitution.

Could the legislature, then, of Dakota, have constitutionally vested in boards of county commissioners judicial powers?

The authorities of state courts, cited by counsel, have little pertinency. In these authorities there is no question as to the constituional power of state legislatures to vest such boards with judicial powers. The sole question is as to the legislative intent; and the highest courts of New York and Nebraska are particularly emphatic to the effect that such boards in those states have judicial powers. Brady v. Supervisors, etc., *supra*; Martin v. Board of Supervisors, 29 N. Y. 645; Brown v. Otoe County, 6 Neb, 111.

Section 1907, of the Revised Statutes of the United States, which is a part of our organic act, or constitution, provides that "the judicial power in Dakota * * * shall be vested in a supreme court, district courts, probate courts and in justices of the peace."

It would seem that this language is too plain and simple to cast any doubt upon the proposition that no judicial power can be constitutionally vested in this territory except in the courts mentioned. "The judicial power in Dakota" cannot be construed to mean only some of the judicial power in Dakota, without a violation of the fundamental laws of thought.

The decision of the learned trial judge was doubtless based upon a doubt as to the power recognized by him in the commissioners being a judicial power. Upon this it may be said briefly that we know things only by their attributes; and if to the action of the county board, the essential attributes of *res adjudicata* be conceded, (v. *supra*) it follows that the power they assume to exercise in the given case, is a judicial power. If to this it be objected that such action could not have the attributes of a final judgment, except through the failure or refusal of the claimant to pursue the statutory remedy of appeal, it may be replied that this is neither more nor less than may be said of any court from whose orders and judgments an appeal will lie.

Counsel for respondent argues that boards of county com-

missioners in this territory can, and do, constitutionally have judicial powers,—enumerating as such the power to try school township officers for neglect of duty or malfeasance in office, and to oust them if found guilty (Laws of 1883, Chap. 44, Sec. 101); and the power to punish contempts and enforce by attachment or other compulsory process all orders made (Pol. Code, Chap. 21, Sec. 23).

Without discussing the nature or validity of these powers, we may remark that judicial power is but one of the powers or forms of sovereignty. This is not the place for the enumeration of such powers. A county, however, as "a body politic for civil and political purposes," may exercise, though in a very limited and subordinate degree, somewhat of the sovereign power.

Whatever of such power a county in Dakota may lawfully exercise through its commissioners, must be delegated to them by the territorial legislature within constitutional limitations, and may be a political, but, as we have seen, cannot here and now be a judicial power.

In the Arizonia case of Smith *et al.* v. Mohave, 8 Pac. Rep. 160, cited by appellant, the court while declaring, under the law of that territory, that "the right to sue a county remains unimpaired, and extends to every case of account, after presentation to and rejection by the county board," do not in their decision consider legislative power, but only legislative intent. Under the law of Arizona, as we find upon examination, there is no such limitation as to the investment of judicial powers, as there is in our organic act. In Section 2 of an act of congress entitled "An act to provide a temporary government for the territory of Arizona, and for other purposes," we find: "The judicial power shall be vested in a supreme court, to consist of three judges, and such inferior courts as the legislative council may by law prescribe."

But the supreme court of Idaho, which territory has, as part of its organic law, precisely our own Section 1907, (v. *supra*) say in the case of Rupert v. Board of County Commrs. of Alturas County, reported in 2 Pac. Rep. 718: "Boards of

county commissioners * * * have no judicial functions or powers, and cannot be vested therewith." And in Montana, having also identically our own organic law, the supreme court say: "The county commissioners have no judicial powers. They cannot, in any sense exercise the functions of a court." After reciting Section 1907 *(supra)* the same court say: "Any statute of the territory that attempts to clothe the commissioners with judicial authority is necessarily null and void." Hedges v. Commrs. Lewis and Clark Co., 1 Pac. Rep. 748.

Even were the limitation in Section 1907 *(supra)* less strict, it would seem that there is another section of our organic act almost equally prohibiting the legislature from investing county boards with judicial powers. Section 1868 of the organic act, provides that "The supreme court and district courts respectively, * * * shall possess chancery as well as common law jurisdiction."

Now in the language of Mr. Justice MILLER, delivering the opinion of the court in Ferris v. Higley, 20 Wall. 375, and speaking of a like clause in the organic act of Utah territory: "The common law and chancery jurisdiction here conferred on the district and supreme courts, is a jurisdiction very ample and very well understood. It includes almost every matter, whether of civil or criminal cognizance, which can be litigated in a court of justice." The question before the court was whether the legislature of Utah, under organic law practically the same as ours, could vest in probate courts "original jurisdiction, both civil and criminal, as well in chancery as at common law." Some judicial power, it was conceded, the Utah legislature might vest in probate courts; for their organic law has a clause just like our Section 1907. But the supreme court held that an act attempting to confer on probate courts the words last quoted, was null and void. "We are of the opinion," says the court, "that the [act] we have been considering is inconsistent with the general scope and spirit of that act in defining the courts of the territory, and in the distribution of judicial power amongst them, inconsistent with the nature and purpose of a probate court as authorized by that act, and inconsis-

tent with the clause which confers upon the supreme court and the district courts general jurisdiction in chancery as well as at common law. The fact that the judges of these latter courts are appointed by the federal power, paid by that power,—that other officers of these courts are appointed and paid in like manner—strongly repels the idea that congress, in conferring on these courts all the powers of courts of general jurisdiction, both civil and criminal, intended to leave to the territorial legislature the power to practically evade or obstruct the exercise of those powers by conferring precisely the same jurisdiction on courts created and appointed by the territory."

*A fortiori*, if a territorial legislature cannot divide the jurisdiction of the supreme and district courts with probate courts, which are expressly recognized as courts by the organic act,— such legislature cannot divide, "evade or obstruct the exercise of" that jurisdiction by any power it may seek to confer upon county commissioners, which are in no manner recognized as courts by the organic act.

The sections of these statutes relied upon by respondent to make out his position that plaintiffs' sole remedy lay in an appeal from the order of the board, which sections are above cited by their number, may, in so far as applicable to cases like the one at bar, be interpreted as in harmony with the organic act by holding that they, in effect, give to claimants, at their option, a simpler and sometimes a speedier way to get their rejected claims passed upon by the district courts, than by an original action brought in such courts.

The judgment of the district court is therefore reversed, with directions that this cause stand for trial at its next term.

All the justices concurring.