SALT LAKE CITY, RESPONDENT, v. ARMSTRONG ET AL., COUNTY COMMISSIONERS OF SALT LAKE COUNTY, APPELLANTS.

### TAXATION—EQUALIZATION BY COUNTY BOARD.

1. Under section 11, art. 13, of the constitution, and section 21, subd. 15, c. 131, Sess. Laws Utah 1896, the county board of equalization may raise or lower the valuation of the assessment of any class of property in the county for city taxes as well as for county taxes.

2. After full investigation and careful consideration of the assessment, the board may raise or lower the valuation of real estate in a particular locality to equalize with the valuation in the rest of the county.

3. Sections 72 and 73 of chapter 129, Sess. Laws Utah 1896, refer to reductions of the valuation of the property of individuals on their respective applications, not to the valuation of an entire district.

(No. 850.   Decided July 29, 1897.)

Appeal from the Third district court, Salt Lake county. A. G. Norrell, *Judge.*

Action by Salt Lake county against Francis Armstrong and others, county commissioners of Salt Lake county, sitting as a board of equalization. From the judgment defendants appeal. *Reversed.*

*Waldemar Van Cott, R. W. Young* and *Bennett, Harkness, Howat & Bradley,* for appellants.

*William McKay* and *David B. Hempstead,* for respondent.

(No briefs were filed.)

ZANE, C. J.:

This is an appeal from a judgment declaring the board of equalization of Salt Lake county had no jurisdiction to adopt the following order, and declaring it annulled: "Resolved, that it is the opinion of the board of equalization of Salt Lake county, Utah, from evidence duly introduced before it, that the real estate of said Salt Lake county and Salt Lake City is unequally assessed, and a large portion of the real estate of said city and county is assessed above its actual cash value, and in excess of the reduction hereby ordered; and that is especially true of that portion of Salt Lake City lying south of the north line of Third South street, and north of the north line of Ninth South street, and of all that portion of Salt Lake City lying west of First West street and north of Third South street; and this board hereby orders that the assessment of the real estate in these portions of Salt Lake City be, and it is hereby, reduced twenty per cent; and it is the opinion of said board, from such evidence, that a portion of the real estate in Salt Lake City and Salt Lake county is unequally assessed, and is assessed above its actual cash value; and especially is this true as to that portion of Salt Lake City and Salt Lake county lying between the north line of Ninth South street and the north line of Twelfth South street, being bounded on the east by the most eastern point of Salt Lake City extended southward, and bounded on the west by the most western point of Salt Lake City extended southward; and this board hereby orders that the assessment of the real estate in such portions of Salt Lake City and Salt Lake county be, and the same is hereby reduced forty per cent." It appears that the county of Salt Lake is one assessment district, and that on the 12th day of June, 1897, the assessment was completed, and that the city authorities

determined it would be necessary to raise by taxation revenue, in addition to the revenue received from other sources, $262,500, and fixed the tax rate at 7 mills on the dollar, that being the rate necessary to raise the revenue required; that on the 12th day of the following July by the order above quoted the valuation of the real estate was reduced in the district described in the order; that the reduction amounted to $5,000,000 on the valuation. With this reduction, it is claimed by the city authorities, the revenue will be insufficient to pay the ordinary and necessary expenses of the city for the year for which the assessment is made. It appears further that the board, after having made reductions in the taxes of various individuals in the county and city, and after hearing oral objections of the owners of said real estate in the districts named in the order, upon investigation and on its own motion, made the reductions mentioned in the order complained of. In view of these facts the question arises, had the board the power to make the reduction? Counsel for the city claim: First. That the board had no authority to reduce the valuation of the real estate by a general order, but that such should have been made upon the written application of the owners of the real estate; that the board had no right to establish districts as they did by the order, and reduce the valuation upon all the real estate within the limits which they prescribed. Second. That, if they had the authority, they could only act upon the written application of the owners of the real estate within such districts.

Section 3 of article 13 of the state constitution declares that "the legislature shall provide by law, a uniform and equal rate of assessment and taxation on all property in the state, according to its value in money, and shall prescribe by general law such regulations as shall secure a

just valuation for taxation of all property; so that every person and corporation shall pay a tax in proportion to the value of his, her or its property. * * *" Section 11 of the same article provides that: "* * * The duty of the state board of equalization shall be to adjust and equalize the valuation of the real and personal property among the several counties of the state. The duty of the county board of equalization shall be to adjust and equalize the valuation of the real and personal property within their respective counties. Each board shall also perform such other duties as may be prescribed by law." The last section makes it the duty of the county board to adjust and equalize the valuation of the real and personal property within their respective counties, without prescribing the mode to be adopted. This leaves the board the discretion to adopt any reasonable and just method, and if, upon an examination and investigation of the assessment, the board should be of the opinion that the real estate in a particular locality is too high, and that in other localities the assessment is too low, it would appear to be a reasonable exercise of its authority to prescribe the localities, and raise or lower the valuation so as to equalize the assessment in such districts (describing them). The court may take notice of the fact that a number of deputy assessors are employed by the county assessor, and that these men in assessing the property may differ in their estimates as to the value of the property, and it would seem reasonable that some general authority should exercise the power of equalizing their various assessments so as to make it equal and just throughout the city and county. Section 21, subd. 15, c. 131, Sess. Laws Utah 1896, provides that the board of equalization shall have power "to equalize assessments and to raise or lower the assessed valuation of any class of property in their re-

spective counties (except property assessed and valued by the state board of equalization), for county, county school, or special school taxes. The board of county commissioners may remit or abate the taxes of any insane, idiotic, infirm or indigent person to an amount not exceeding ten dollars for the current year." This section must be construed as meaning that the board of equalization may raise or lower the assessed valuation of any class of property in their respective counties for city taxes, as well as the valuation for county or other taxes. It would be unreasonable to assume that the legislature intended that the county taxes should be based on the valuation of classes of property as fixed by the board of equalization, and the city taxes on the valuation as fixed by the assessor. Hence we assume the board had the authority to raise or lower the assessed valuation of classes of property for city taxes as well as for county taxes.

Section 72, c. 129, Sess. Laws Utah 1896, declares that: "No reduction must be made in the valuation of property unless the party affected thereby, or his agent, makes and files with the board a written application therefor, verified by his oath, or shall appear before the county board of equalization and show facts upon which it is claimed such reduction should be made." And section 73 provides: "Before the board grants the application, or makes any reduction applied for it may examine on oath the person or agent making the application touching the value of the property of such person. No reduction must be made unless such person or the agent making the application, if required, attends and answers all questions pertinent to the inquiry." These two sections refer to reductions upon the application of individuals, and not reductions made upon classes of property within certain localities designated or described by the board. The lat-

ter may be made without a written application, upon such reasonable examination and investigation as the board may make according to its best judgment. It would be unreasonable to require several thousand people, property owners in a large district, each to make a written application for such reduction. Where the excessive valuation applies to the entire district, the board may make the reduction as we have indicated, without a written application being made.

We are of the opinion that the court below erred in holding that the county board exceeded its authority in making the order, and in annulling it. The judgment is therefore reversed, and the cause remanded.

BARTCH and MINER, JJ., concur.