THE ATCHISON, TOPEKA & SANTA FE RAILWAY COMPANY, v. E. S. WIGGINS, *County Treasurer of Woodward County et al.*

1. PETITION.—*Sufficiency of.* A petition which alleges facts to show that a tax levy of 14 mills for the purpose of paying the salaries of county officers for the ensuing year was made by the board of county commissioners, when 8 mills would be more than sufficient for such purpose, and that plaintiff has paid 8 mills of the tax, and that the county treasurer is threatening to collect and will issue his warrant for the collection of the balance of the tax so levied unless enjoined from so doing, states a good cause of action, and it is error to sustain a demurrer to such a petition.

2. ILLEGAL TAX.—A tax levy which is clearly in excess of the amount which the board of county commissioners are authorized to levy for a particular purpose, is illegal.

3. INJUNCTION.—The remedy by injunction is one provided by law to restrain the threatened enforcement of an illegal tax.

*Error from the District Court of Woodward County.*

Action to enjoin the excess in a tax levy for salary of county officers. Judgment for defendants, from which plaintiff appeals.    Reversed.

*Henry E. Asp, J. W. Shartel and J. R. Cottingham,* for plaintiff in error.

*R. B. Smith, County Attorney,* and *R. J. Ray,* (without briefs), for defendants in error.

The opinion of the court was delivered by

BIERER, J.:    The plaintiff brought its action in the district court of Woodward county on the 4th day of May, 1897, its petition being as follows:

"In this District Court of Woodward county, Oklahoma Territory, The Atchicon, Topeka & Santa Fe railway company, plaintiff, against E. S. Wiggins, as county treasurer of the county of Woodward and Territory of Oklahoma, and A. Ingalls, W. W. Carter and Edward Claunch, the board of county commissioners of the county of Woodward and Territory of Oklahoma, defendants.

#### " PETITION.

"Comes now the plaintiff and for its cause of action against the said defendants, alleges and avers that heretofore and in, to-wit, the year 1896, it was and is now a corporation duly organized and existing under the laws of the state of Kansas and owned, possessed, controlled and operated a certain line of railway into and through

the county of Woodward and Territory of Oklahoma, and
that the board of railway assessors of said territory for
the year 1896 assessed all of the railroad property of the
said plaintiff, in said Woodward county, at and for the
sum of three hundred five thousand, five hundred thirty-
two and 12-100 dollars ($305,532.12) and that thereafter
levies of various taxes for various territorial, county and
municipal purposes were levied for the same year, and
that the said board of county commissioners for said
county attempted to levy for said county for the purpose
of paying county salaries, a levy of fourteen mills on the
dollar valuation of the said county, and that the total
assessed valuation of the said county is the sum and
amount of seven hundred one thousand dollars ($701,000,)
including the property of this plaintiff, so assessed for
taxation in said county, and that the total salaries to be
paid out of the salary fund of said county, as fixed and
established by law for the year 1896, was only the sum of
four thousand, two hundred dollars ($4,200) and that as
against said sum there was the sum of at least one thous-
and four hundred dollars ($1,400) arising from saloon
licenses and other sources than the ordinary taxation to
be applied thereto and credited thereon. That the tax
levy so made for the purpose of paying county salaries,
by the said board of county commissioners, on the prop-
erty of this plaintiff alone, amounted to the sum of four
thousand two hundred seventy-seven and 44-100 dollars
($4,277.44) and being more than sufficient to pay and
discharge all of the county salaries properly chargeable
to said fund, and that the said levy of taxes on the tax-
able property of said county for county salaries was more
than double the amount necessary to pay each and all of
said salaries, and that a levy of nine mills is more than
sufficient to raise all sufficient and necessary revenue to
pay all of the charges properly chargeable to the said
county salary fund, including twenty-five per cent. for
contemplated delinquent taxes.

"That the said plaintiff has paid of its said taxes eight
mills, levied for such purpose, and all of its other taxes

except six mills of the said levy so levied for the purpose of paying said county salaries, which said sum is excessive, illegal and unjust, and which said sum the said county treasurer of·said county is now threatening to collect, and will issue his warrant for the collection thereof, and cause the same to be levied of the property of this plaintiff unless restrained from so doing. That plaintiff has no other adequate relief at law, and therefore prays that the said defendants, and each of them, be perpetually enjoined from collecting or attempting to collect, or issuing any warrant for the collection of the sum of one thousand eight hundred and thirty-one dollars ($1,831) of the said unlawful levy, so as aforesaid, made for the purpose of paying county salaries, and that the plaintiff in the meantime, be granted a temporary injunction against the collection of said sum, and on the final hearing thereof that the said injunction may be made perpetual.

HENRY ASP,
JOHN W. SHARTEL,
J. R. COTTINGHAM,
HOUSTON & MARUM,
Attorneys for Plaintiff."

"Territory of Oklahoma,   } ss.
    Logan County,    }

"J. R. Cottingham, of lawful age, being first duly sworn, upon his oath deposes and says, he is one of the attorneys for the plaintiffs in the above action; that he has read the above petition and knows the contents thereof and each, all and every of the allegations therein contained are true.

"J. R. COTTINGHAM.

"Subscribed in my presence and sworn to before me this third day of May, 1897.

[SEAL]    "ELIZABETH PARSONS, Notary Public.
    "My commission expires January 20, 1901."

And upon this petition a temporary order of injunction was granted.

The defendants demurred to the petition upon the

ground that it does not state facts sufficient to constitute a cause of action. This demurrer was sustained, and judgment rendered for the defendants dissolving the temporary order, and denying the injunction, and for costs; and the sole question is, does this petition state a cause of action?

A part of § 3, art. 2, ch. 43, of the Session Laws of the territory, of 1895, provides:

"At the regular meeting in July of each year the board of county commissioners shall prepare an itemized esti-mate of the necessary expenses of the county during the ensuing year, including the amount necessary to meet outstanding indebtedness, as evidenced by bonds legally issued and the interest thereon, and such estimate shall state the amount of revenue necessary to be raised for each fund, and the rate of levy necessary to raise such estimated revenue, with twenty-five per cent. added thereto as allowance for delinquent taxes. The levies for county purposes shall be a separate, specific and suffi-cient levy for the payment of salaries; a levy for court expenses not exceeding three mills; for support of the poor, including insane, not exceeding two mills; for roads and bridges, not exceeding two mills; for county supplies, not exceeding three mills; for contingent fund, not exceeding three mills; which last item shall include all county expenses not properly chargeable against any of the other funds hereinbefore provided for; and for a sinking fund, to be paid in money, such rate as in the estimation of the board of county commissioners will pay one year's interest on all outstanding bonded debt of the county, together with such part of the principal as shall be by law required, such fund to be applied, first, to the payment of the interest, and second, to the payment of the principal."

This is the statute under which this levy was made, and it is claimed by plaintiff in error that while this statute makes an express limitation upon the amount of

31—v.

the levies which the board of county commissioners can make for certain of the funds provided by this law, and makes no such express limitation upon the amount of the levy for the salaries of county officers, yet as the county commissioners are given authority only to make "a separate, specific and sufficient levy for the payment of salaries," they have no authority to levy an amount which is clearly in excess of the amount required to pay the salaries of the county officers for the ensuing year. In our judgment this is the law.

The power to levy taxes is a sovereign power reposed in the legislature, and delegated by it to municipal boards or officers to be exercised for an express purpose, or as a necessary incident to the exercise of some power clearly granted. In the case before us it was delegated to the board of county commissioners to make "a separate, specific and sufficient levy for the payment of salaries" of the officers of the county "during the ensuing year." This is an authority to levy annually all the tax that will be necessary to pay one year's salary of such officers, but not to levy in one year sufficient for two or ten years.

Upon existing and appropriate conditions the commissioners may make an estimate of the amount necessary to meet the payment of the salaries for one year, and to this they may add twenty-five per cent. for delinquent taxes; but they may not add more than two hundred per cent., as has been done in this case, if the allegations of the petition, admitted by the demurrer, are true, or a thousand per cent., as may be done in the next case.

With reference to several other levies provided for in this section of the revenue law, there is an express limitation upon the amount that can be levied for these particular purposes—a point beyond which the commissioners cannot go—no matter what the urgency of the

demands of the instance may be; but that cannot be con-
strued to make the wish of the commissioners the limit
of their levy for salaries. The limit of the levy for the
payment of salaries may be much more difficult of ascer-
tainment than for these funds which have prescribed
boundaries, but it as surely exists, and that may be said to
be where the necessity ceases, when enough has been
levied to meet the demand on the fund for the year. It
is for that purpose that this public exaction is permitted,
and when that has been satisfied, the exercise of the
authority is complete. The complete exercise of power
furnishes its own limitation upon the authority. When
what has been done is all that there has been given
authority to do, a limitation is as surely presented as
though stated is express language. A clear absence of
authority to do an official act has always been held to
render the act void. This petition alleges that the
assessed valuation of the property of Woodward county
for the year 1896 is $701,000, and that the total salaries
to be paid out of the salary fund for that county amount
to $4,200, and that as against this there was a sum of at
least $1,400 arising from saloon licenses, and other
sources of revenue than the ordinary taxation, and which
is to be applied to and credited on this salary fund.
This would leave a balance of $2,800 to be raised for the
salary fund for that year by the levy of a tax by the
board of county commissioners. Add the twenty-five
per cent. allowed by law for delinquent taxes, and the
total amount to be levied would be $3,500. A fourteen
mills levy, however, would amount to the sum of $9,814,
which would make an excess of $6,314, almost twice the
amount of the levy which the commissioners were author-
ized to make. Such an excess as this certainly cannot
be supported by any grant of authority to the board of

county commissioners by the statutes before us; and the enforcement of such a tax would be a ruinous exaction upon the property of the county, not levied for the purpose of meeting a necessary public expense, the principle upon which tax burdens are allowed to be laid.

A levy of eight mills, which is the amount the plaintiff alleges it has paid of this tax levy, would amount to $5,608, which would be $2,108 more than the amount which is alleged to be sufficient to meet the entire salaries to be paid out of the salary fund, after deducting the $1,400 raised from saloon licenses and other sources, and adding twenty-five per cent. thereto for delinquent taxes.    This, it seems, ought to be sufficiently liberal.

The determination of the amount of the levy for the salary fund undoubtedly required computations to be made, based upon the amount of taxable property of the county, and the amount of the salaries, which are graduated according to the population of the county, and, the exercise of such powers in the levy of a tax does not make the act of the county commissioners such that it is beyond the power of the court to correct mistakes made in the determination of the amount of tax necassary to meet the demands of the fund for which the levy is made; and if the levy is shown to be clearly excessive, we can see no reason why a party cannot complain to the court and have unnecessary exaction upon his property enjoined.    Upon principle we would conclude that the tax which is clearly excessive is, as to the excess, illegal, and this conclusion is as strongly supported by authority as it is sound in principle.

In the case of *Hurt v. Hamilton*, 25 Kan. 76, a levy of $12\frac{1}{2}$ mills was made for the purpose of paying certain bridge bonds which had been issued to the amount of

$23,000. It was determined that $13,000 of these bonds were legal, and that a levy of 7 mills was sufficient to pay the due proportion of principal and interest for the year in question, and the balance of the bonds, 5½ mills of the levy were enjoined.

In the case of *The Board of Commissioners of Osborne County v. Blake*, 25 Kan. 356, a levy of taxes which was made to pay judgments which had been rendered upon unpaid demands of the county on account of the annual expenses of the county which could not be paid out of the fund provided by law, and which had been levied to its limit for the years in question, was held to be in excess of the power of the county commissioners, and the levy was enjoined as illegal.

In the case of *Burlington & M. R. R. Co. v. Saunders Co.*, [Nebraska], 19 N. W. 698, it appears that there was due from the county the sum of $1,765.22 on account of the insane fund, and this was, under the law, certified by the superintendent of the insane hospital to the auditor of state, and the auditor notified the county clerk of the county that this amount was due from the county, and the board of county commissioners then proceeded to levy a tax to pay this amount into the state treasury. An excessive levy was made by the commissioners to meet the charge, and the tax, as to the excess, was enjoined. It is stated in the opinion:

"The testimony shows that a tax of one mill on the dollar for the year named will produce considerably more than $1,765.22. As the tax is levied in pursuance of an express provision of the statute, no greater sum can be levied than is expressly authorized; therefore, to the extent of $1,765.22, the tax is sustained, and all in excess of that sum, being levied without authority of law, is void and is perpetually enjoined."

The statute under which that case was determined provided that:

"The board of county commissioners shall add such amount to the next state tax to be levied in said county, and pay the amount so levied into the state treasury."

In this case it provides that the levy "for county purposes shall be a separate, specific and sufficient levy for the payment of salaries." In that case, as in this, there was no express limitation upon the amount which the board of county commissioners should levy. In both cases the board is authorized to make a sufficient levy to meet the charge on the particular fund; but in that case, as we hold in this, it was held that "no greater sum can be levied than is expressly authorized," and if it is done the collection of the excess may be enjoined.

In the case of *Libby v. Burnham*, 15 Mass. 144, the assessor was authorized to assess for one year the sum of $1,817.22, when he assessed the sum of $1,966.16; and for another year he was authorized to collect the sum of $2,488.47, when he assesed the sum of $2,701.15. The law appears to have authorized the assessor to add 5 per cent. to the sums required, for fees or commissions, and upon that case Parker, C. J., said:

"We are of opinion that assessing more than five per cent. above the sums voted by the town to be raised, makes the assessment illegal and void."

The same court stated in the case of *Joyner v. School District No. 3*, 3 Cush. 567, that:

"Assuming all other proceedings to have been regular, the excess in the amount of the tax assessed, beyond the sum voted to be raised by the district, would alone vitiate the assesment, and render the tax illegal. Under the vote of the district to raise $250, the assessors assessed the sum of $285.01; an amount far exceeding the excess

which is allowed by the statute.    This is a fatal objection to the validity of the tax."

We will admit that these cases appear to have drawn the point pretty fine, but they serve to show how strictly the doctrine which controls our opinion in this case is adhered to by the supreme courts whose decisions hold a leading position among the authorities.    Our decision is in harmony with the conclusion of the supreme court of Pennsylvania in the case of *Appeal of Conors et al.*, 103 Pennsylvania State, 356, the syllabus of which case states.

"Although legislative authority be given to impose a tax for a certain purpose, yet if the tax levied be clearly in excess of the sum required for the purpose, a court of equity will enjoin its collection to the extent of the excess."

In answer to the argument that injunction is not the proper remedy for such a case as this, it is sufficient to observe that it has not only been held to be the proper remedy in other states, as will be seen from the above decisions from the supreme court of Nebraska and Pennsylvania, but it has so many times been held to be the proper remedy under the Kansas code, which we have adopted, that it is unnecessary to cite further authorities on this point than the two Kansas cases above cited.

The judgment of the court below is reversed, and remanded, with directions to overrule the demurer to plaintiff's petition.

Dale, C. J., having presided in the court below not sitting; all the other Justices concurring.