# E. E. BARDRICK *et al.* v. J. H. DILLON *et al.*

(Filed July 30, 1898.)

1. TAXATION—*Equalization—Townships—Method.* Our revenue laws authorize the county board of equalization to equalize the assessment rolls of the several townships in the county, but prescribe no method by which such equalization shall be accomplished. The word "equalize" is here used in its ordinary and common sense, and has no technical meaning. And where the law makes it the duty of the county board to equalize the assessment rolls, and prescribes no method to be adopted, the board may adopt any reasonable and just method; and if, on examination of the several rolls, the board should be of the opinion that some of the townships are assessed too low, and others represent an assessment of the true cash valuation of the assessed property, such board may adopt as a basis for equalization the assessment roll which, in their judgment, the most nearly represents a true cash valuation, and may add to or deduct from the other townships such per cent as will cause them to conform in valuation to the one adopted as a basis; and such method will be within the powers of the board to equalize the assessment rolls of the several townships, notwithstanding such action may either increase or decrease the aggregate valuation as shown by all the township returns.

2. ASSESSMENT—*True Cash Value—Increase—Injunction.* The law requires all property to be assessed on its true cash value, and the board of equalization, in exercising its powers of equalizing the various assessment rolls, has no authority to increase the valuation of the property of any individual in excess of its true cash value; and, if such excessive valuation results from such equalization, a court of equity will enjoin the tax levied on the excess, where the amount of tax due on the true cash valuation is paid or tendered before suit is brought.

3. MUNICIPAL GOVERNMENT—*Revenues.* A court will not cripple a municipal government by enjoining its revenues on the uncertain and speculative allegation that the authorities will misapply the funds when collected. A court of equity can prevent such mischief at the proper time on application to enjoin such misappropriation.

4. COUNTY DEBT—*Limitation.* The bare allegation that the county board has fraudulently contracted liabilities in excess of the 4 per cent limit is not sufficient grounds upon which to enjoin the collection of a tax for general revenue purposes. It must be made to clearly appear, from the allegations of the petition, what the last assessed valuation of the county was prior to contracting such

indebtedness, the purposes for wh'ch it was contracted, the total legal outstanding indebtedness of the county at the t.me such debt was created, the available assets of the county at the time, and that said revenues are not required to meet ordinary current expenses of the county.

(Syllabus by the Court.)

*Error from the District Court of Blaine County; before J. C. Tarsney, District Judge.*

*P. S. Nagle* and *Seymour Foose,* for plaintiff in error.

*J. H. Campbell, County Attorney,* for defendant in error.

Petition by E. E. Bardrick and others against J. H. Dillon and others. From judgment for defendants, plaintiffs appeal. Reversed.

Opinion of the court by

BURFORD, C. J.: A number of resident tax-payers of Cimarron township, in Blaine county, filed their petition in the district court of Blaine county against the county treasurer, sheriff, and board of county commissioners of Blaine county, to enjoin the collection of a portion of the taxes levied against them for the year 1895 in said county. After the filing of the petition, quite a number of the plaintiffs were given leave to dismiss, and they withdrew from the cause. The defendants demurred to the petition on the ground that it did not state facts sufficient to entitle the plaintiffs to the relief prayed for; and this demurrer was sustained, and cause dismissed. From this ruling and judgment the plaintiffs appeal to this court.

The petition alleges, in substance: That at the proper time for assessing property the plaintiffs, and each of them, furnished the assessor with a full and complete schedule of all his property subject to taxation or liable

to be assessed, and valued to the assessor at its actual cash value. That the township assessor accepted such assessment lists, and each of them, and duly assessed all the property of each plaintiff at its true and actual cash value, and made correct and proper returns thereof to the township board of equalization. That at the proper time the township board met, and heard all persons who felt themselves aggrieved by their assessment, and no changes were made in their assessment and valuations as made and accepted by the assessor. That the assessor made his return to the county clerk of Blaine county, as required, and that the roll returned by him contained a schedule and list of all the property of each of the several plaintiffs, and that each and every item of property embraced in said returns and assessment roll was therein valued at its true and actual cash value. That the aggregate of the assessed valuation of all the property in said Cimarron township, as shown by the assessor's returns, was the sum of $30,108, which sum represented the cash value of all the assessable property in said township for that year. That the township and school boards met at the proper time, and made all the levies for township and school purposes severally required of them upon the assessed valuation as returned by the township assessor. That afterwards the board of county commissioners of Blaine county met as a board of equalization, and after examining the returns from the several townships, proceeded to equalize the assessment rolls returned from the several townships in said county. That there are thirteen municipal townships in said county, and that said board adopted the assessment returns of Homestead township as a basis upon which

to equalize the various townships of the county, and ordered that assessments in the following townships to be raised as follows: Canadian township, 20 per cent.; Lincoln township, 40 per cent.; Logan township, 20 per cent.; Arapahoe township, 50 per cent.; Dixon township, 30 per cent.; Wells township, 12 per cent.; Cantonment township, 50 per cent.; Seay township, 30 per cent.; Cimarron township, 40 per cent. That no changes were made in the townships of Watonga, Cedar Valley, Flynn, and Homestead. That the total returns as shown by the several township assessment rolls was $324,228, which, it is alleged, was the true cash value of the assessable property in Blaine county for the year 1895. That the aggregate assessed valuation of the county as shown by the equalized returns was $376,104, which sum is $51,826 in excess of the true cash value of all the property in Blaine county subject to taxation for the said year. It is then alleged that the action of the board of equalization in increasing the assessed valuation of the taxable property of said county was not actuated by a desire to arrive at and fix the true cash value of the property in said county for revenue purposes, but that said board had contracted a large amount of illegal and fraudulent indebtedness, which the ordinary revenues of the county, derived from a tax on the true cash value of the assessable property in the county, would not pay; and that the board, for the purpose of raising revenues to meet and pay said indebtedness, and for the purpose of avoiding and evading the limitations fixed by law upon the amount of liabilities they might create, fixed a false and fictitious value on said property, and increased said assessments for said purposes. It is also alleged

that a large number of warrants had been issued in excess of the 4 per cent. limit, and the board was desirous of paying same. A number of other allegations are made in the petition, but, as they are not referred to in the brief of plaintiffs in error, we need not recite them here.

The demurrer admitted the truth of the allegations of the petition which were well pleaded. Conceding these allegations to be true, are the petitioners entitled to any relief? They alleged that they had each tendered to the county treasurer the amount of taxes levied for all purposes, calculated upon the assessments made by the township assessor and township board of equalization. We have not been favored with any brief by the defendants in error, and are not advised what their theory of the case is.

The first contention of counsel for plaintiffs in error is that in exercising its power of equalizing the assessments of the several townships the county board had no power to increase the aggregate assessment of the county as shown by the total of the several township returns. A similar question was before this court in the case of *Wallace v. Bullen,* 6 Okl. 17-757, relating to the powers of the territorial board of equalization, and was decided adversely to this contention. The power of taxation is a legislative power; and when the legislative department has prescribed the mode of determining valuations, assessing and levying taxes, and collecting revenues arising therefrom, the courts will not interfere with that power unless some constitutional or organic limitation or restriction on the legislative power has been violated or ignored. And when the legislature has adopted such mode, and provided for the officers who shall carry out

the scheme of taxation, and prescribed their powers and duties, the courts will not enjoin the collection of the revenues as long as such officers have kept within their prescribed powers in the exercise of their duties.

There is no one subject that has received more attention at the hands of the courts than that of taxation in some of its various phases; and while a few settled rules pervade all the adjudicated cases, an exploration of the vast labyrinth of adjudications by the courts of last resort in the several states and territories discloses the fact that one jurisdiction can derive but little aid from the decisions of another on these subjects. Each state has its own particular constitutional provisions and limitations, and its special modes of procedure. In most all some form of appeal or review is provided for the relief of the taxpayer whose property is excessively valued or improperly assessed. Each has, by some form of legislative enactment, conferred certain specific powers upon its assessing officers and equalization boards, and surrounded them with such limitations and restrictions as they have deemed prudent and judicious. These legislative provisions all being more or less at variance with each other, leaves each jurisdiction to depend upon its own constitutional or statutory provisions and limitations for determining its powers and duties.

In this Territory the only specific limitation placed upon the legislature in providing the mode and means for raising public revenues is that found in the Organic Act, (section 6,) viz: "No law shall be passed interfering with the primary disposal of the soil; no tax shall be imposed on the property of the United States, nor shall the lands or other property of non-residents, be taxed higher

than the lands or other property of residents, nor shall any law be passed impairing the right to private property, nor shall any. unequal discrimination be made in taxing different kinds of property, but all property subject to the taxation shall be taxed in proportion to its value." The legislature of this Territory, in the proper exercise of its powers, has provided a complete system for the assessment and valuation of property, the assessing and levying of taxes, and the collection of revenues for carrying on the departments of government. (*Wallace v. Bullen, supra.*)

With the wisdom or propriety of the various provisions of this law the court has nothing to do. We must accept the law as we find it, and interpret its provisions according to the established and known meaning of words and the settled rules of construction. After property has been assessed by the township assessor, and the township board of equalization has made such corrections of individual assessments as come within its authority, the assessor completes his assessment roll and returns it to the clerk of the county. After the returns are made from all the townships, the statute provides that the board of county commissioners shall hold a session at a fixed time "for the purpose of equalizing the assessment rolls in their county between the several townships." (St. 1893, ch. 70, art. 6, sec. 2.)

This statute prescribes the power of the county board, but makes no provision as to the manner or method in which **it** shall perform that duty or execute the power, nor does it place any limitation on its power. The board is simply empowered to equalize the various township rolls. Now, what does this word "equalize" mean? It

has no technical or scientific meaning. It is a word used in every-day parlance, and is here used in its common and ordinary sense and acceptation. The purpose of having equalizing boards is that all classes of property, all parts of the taxing district, and all persons owning taxable property may bear equal burdens, and to secure equality as near as may be, under a general law. In Webster's International Dictionary "equalize" is defined, "To make equal, to cause to correspond, or be like in amount or degree as compared; as to equalize accounts, burdens, or taxes." The Century Dictionary and Cyclopedia gives this definition: "To make equal, cause to be equal in amount or degree as compared; as to equalize accounts, to equalize burdens or taxes." The word "equalize" is not found in the law dictionaries of either Bouvier or Black, but Black defines "equality," (which is the end to be reached by equalizing) as "likeness in possessing the same rights, privileges, and immunities, and being liable to the same duties." There is nothing in the etymology, origin, or derivation of the word "equalize" that signifies any such meaning as that contended for by plaintiffs in error, and no lexicologist, philologist, or law writer has ever attempted to impute such meaning to the word. It is the duty of the county board of equalization to examine the tax assessment rolls from all the townships in the county, and cause such assessments to be so adjusted and equalized that the property in each township will bear its equal and just burden of the taxes to be levied upon such assessments, and so that all the taxable property in the county will pay its equal proportion of the public revenues. This power is given the board, and duty imposed upon it, by the revenue laws.

The statute points out no manner in which this power is to be executed and duty performed, and there is no limitation upon the manner in which the equalization shall be done, except that property shall not be valued above its true cash value. Our statute contemplates that all taxable property shall be valued for purposes of taxation at its fair cash value; and all assessing officers and equalizing boards are bound, when performing the duties imposed on them, to keep this fact in view, and not fix such values or make such additions for purposes of equalization as will increase property beyond its fair cash value.

In the case under consideration the county board of equalization, in order to equalize the township assessments, took Homestead township as the basis, and added a given per cent. to each of the other townships except four, each of which was left unchanged. In making these additions, the aggregate valuation, as shown by the assessors' returns, was materially increased. This manner of executing the power conferred by the statute was not an unreasonable one, and is not open to any valid objection.

The state of Utah has a law similar to ours defining the duties of county boards of equalization, and in the case of *Salt Lake City v. Armstrong*, 15 Utah, 472, 49 Pac. 641, the supreme court of that state, having under consideration the revenue laws, said: "The last section makes it the duty of the county board to adjust and equalize the valuation of the real and personal property within their respective counties, without prescribing the mode to be adopted. This leaves the board the discretion to adopt any reasonable and just method; and if, upon examina-

tion and investigation of the assessment, the board should be of the opinion that the real estate in a particular locality is too high, and that in other localities the assessment is too low, it would appear to be a reasonable exercise of its authority to prescribe the localities, and raise or lower the valuation so as to equalize the assessment in such districts."

This rule is applicable to our statute, and, as the legislature has not seen fit to provide the method to be adopted by the county board in equalizing the various township assessments, the board may legally adopt any reasonable method which will result in equalizing the valuations of the property in the several townships; and in exercising this power it may adopt as a basis that township assessment which, in their judgment, most nearly represents the true cash value of the property therein embraced, and may, by increasing or decreasing, as the circumstances may require, each of the other assessment rolls, in such per cent. as will cause all to conform in valuation to the one adopted as a basis, and such act will be equalizing, as contemplated by the statute, and will be valid, notwithstanding such action may increase or decrease the aggregate valuation as shown by the original assessor's returns. (*Wallace v. Bullen, supra.*)

We have carefully examined the numerous authorities cited by counsel for plaintiffs in error, which it is contended, support their contention to the effect that, in order to equalize tax rolls of different townships, the board must adopt the mean or average assessment as the standard, and reduce the higher and raise the lower to this mean standard without increasing the aggregate valuation as returned by the assessors. While a casual examination and reading of these cases might lead one

to this conclusion, a critical examination of the decisions and of the statutes upon which they are based discloses the fact that, in every case where a court has laid down such a rule, it has been by reason of some constitutional or statutory provision defining or limiting the powers of the boards of equalization, and in no case has any court based such a ruling upon any definition or signficance of the word "equalize." Our statute contains no such limitations as are found stated as the grounds for these decisions. Hence the adjudicated cases relied upon have no application to the statute here under consideration, and afford but little light in interpreting its provisions. The reasoning and arguments in *Gray v. Stiles*, 6 Okl., 455, is hereby expressly disapproved, and, in so far as that case presents any rule of law in conflict herewith, the same is overruled. *United States Nat. Bank v. Logan Co.*, following rule in *Gray v. Stiles*, is also overuled.

But, while the method of exercising this power adopted by the Blaine county board is not open to objection, it is further alleged in the petition that the property of each of the plaintiffs in the township taken as a basis for equalization was already assessed at its true cash value before the board made the additional raise of 40 per cent. If this allegation of fact is true,—and the demurrer admits it,—then the board exceeded its authority in increasing the valuation; for, while the law requires the property owner to pay taxes on the true cash value of his property, it does not contemplate that he shall pay taxes upon a valuation largely in excess of such true cash value. This question presents a difficult problem. The general rule is well established that, where a party has a legal remedy against unauthorized or illegal tax,

and fails to take advantage of it, equity will not enjoin its collection, unless some equitable excuse is shown for such neglect or excuse. (*City of Peoria v. Kidder*, 26 Ill. 357; *Adsit v. Lieb*, 76 Ill. 198; *Archer v. Railroad Co.*, 102 Ill 493; *Johnson v. Roberts Id.* 655; *Houston & T. C. R. Co. v. Presidio Co.*, 53 Tex. 518.)

But this rule cannot be invoked against the plaintiffs here, because our statute does not authorize property owners to 'appear before the county board of equalization for the purpose of objecting to individual assessments, and provides for no right of appeal or other method for review of the action of such board. The individual whose property is wrongfully or excessively assessed or valued has no remedy to obtain relief, unless the courts furnish him one by injunction. In some states a proceeding for abatement of taxes is provided; in others the actions of boards of equalization are reviewable by writ of *certiorari*; in others a direct appeal is given from the action of the board to the courts; while in a few jurisdictions the only relief that can be had is such as the courts of equity will furnish. The rule is sustained by a great preponderance of authority that the collection of taxes and assessments will not be enjoined, unless some special reason is shown for equitable interference. (Note to *Holland v. Mayer*, etc., 69 Am. Dec. 199, and cases there cited.)

But in this Territory we have a statute which enlarges the jurisdiction of courts of equity in cases involving the assessment, levying, and collection of taxes. Section 4143, Statutes of Oklahoma 1893, provides: "An injunction may be granted to enjoin the illegal levy of any tax, charge, or assessment, or the collection of any illegal tax,

charge, or assessment, or any proceeding to enforce the same, and any number of persons, whose property is affected by a tax or assessment so levied, may unite in the petition filed to obtain such injunction." This section of our statute is embraced in the Civil Code, which was adopted from the state of Kansas.

In the case of *Commissioners v. Lang*, 8 Kan. 284, the supreme court of that state held that this statute gave a new remedy, and said: "Whatever doubt previously existed about the process of injuntion as a remedy to prevent the collection of an illegal tax is removed by this section." There can be no doubt but this statute enlarges the remedy by injunction in tax cases, and clearly gives the complaining party a right to injunction in every case when the tax or assessment is illegal. The seeming conflict in the authorities involving questions under this statute arises out of the difficulty in determining what is meant by an illegal tax or assessment. It has been frequently held by the courts of highest resort in Kansas that the collection of taxes cannot be enjoined on account of any mere irregularity in the proceedings, nor because of any failure of an officer to perform the duties assigned to him within the time specified by statute. (*Bank v. Ferris*, [Kan. Sup.] 39 Pac. 1042, and cases cited.)

But in any case where the assessing officers or boards have, in the exercise of the taxing powers, acted without authority, or in excess of the powers given them by statute, the tax levied as a result of such unauthorized or excessive acts will be illegal to the extent that such tax is the result of such unauthorized action. And where the assessment or tax is illegal in toto, injunction is a

proper remedy for relief; and, in case the tax is invalid in part, the excess will be enjoined where the complaining party has paid or tendered that portion for which his property is legally liable. (*Griffith v. Watson*, 19 Kan. 23; *City of Ottawa v. Barney*, 10 Kan. 270; *Wilson v. Longendyke*, 32 Kan. 270, 4 Pac. 361; *Adams v. Beman*, 10 Kan. 37; *Dutton v. Bank*, [Kan. Sup.,] 36 Pac. 719; *Stiles v City of Guthrie*, 3 Okl. 26, 41 Pac. 383; *Railway Co. v. Wiggins*, 5 Okl. 477, 49 Pac. 1019.)

In the case under consideration, if the property of each of the plaintiffs was valued by the township assessor and the township board at its true cash value, and all said property was returned to the county clerk at its true cash value, any action of the county board of equalization in increasing its valuation for taxable purposes was in excess of their statutory powers, and to that extent their action was illegal, and the tax levied upon such excess of valuation was to that extent illegal, and will be enjoined, unless the action of the board in determining and fixing such value, was, in its nature, judicial, and hence conclusive. It is a general rule that where the legislative department has created a special tribunal, and given it power to hear and determine questions of fact, its determinations, while acting within its jurisdiction, are final and conclusive, and can only be set aside for fraud, mistake of law, or imposition. Some of the courts have applied this rule to the action of taxing officers, and hold that in fixing values such officers act judicially, and that their judgments are conclusive, when attacked by injunction proceedings.

The supreme court of Illinois, in *Hotel Co. v. Lieb*, 83 Ill. 602, said: "Since the value of property is a matter

of opinion, upon which different minds, with equal opportunities of knowledge, and actuated by the same honest desire to arrive at the truth, are liable widely to differ, it has been always held in this court that a court of equity will never interfere to enjoin the collection of a tax, merely because the property has been assessed at a greater valuation than the court would have fixed upon it. Where, however, the valuation is so grossly out of the way as to show that the assessor could not have been honest in his valuation—must reasonably have known that it was excessive—it is accepted as evidence of a fraud upon his part against the taxpayer, and the court will interpose."

And in *Insurance Co. v. Farwell*, 102 Ill. 413, the same court said: "Courts cannot convert themselves into assessors, and reassess in every case where the assessor has erred in judgment as to value." (See, also, as supporting this doctrine: *Woodman v. Ely*, 2 Fed. 839; *Spencer v. People*, 68 Ill. 510; *Adsit v. Lieb*, 76 Ill. 198; *Albany & W. N. R. Co. v. Town of Canaan*, 16 Barb. 244; *Porter v. Railroad Co.*, 76 Ill. 561; *State Railroad Tax Cases*, 92 U. S. 575; *Olympia Waterworks v. Gelbach*, [Wash.] 48 Pac. 251.)

The rule announced in these decisions would no doubt be controlling in the case under consideration were the conditions such as to render it applicable to the powers of taxing officers in this Territory. While it has sometimes been said that taxing officers in this Territory act *quasi* judicially in assessing property, in that they must exercise some judgment, their decisions in such matters can, in no sense, strictly speaking, be termed judicial, as contemplated by our laws. The judicial power for territories rests in the congress of the United States, and con-

gress, by the act creating the Territory of Oklahoma, vested the entire judicial power of the Territory in the supreme court, district courts, probate courts, and justices of the peace. (Organic Act, sec. 9, Statutes 1893, p. 42.)

No part of the judicial power rests in the legislature of the Territory, and it has no power to confer any. No executive or ministerial officer within the Territory can exercise any judicial powers, except such power be conferred by act of congress. The correct rule, as applicable to the taxing powers of this Territory, is the same as that stated by Mr. Justice Brewer, in *Board of Com'rs v. Sergeant*, 24 Kan. 407. In that case a suit was brought to enjoin the collection of a tax based upon an assessment made by the board of county commissioners under a statute authorizing the board to correct false returns or assess omitted property, and hear evidence in order to determine correct values. The district court, on petition for injunction, heard evidence, and determined the true value of the property in question and enjoined a portion of the tax. The board appealed, and it was contended that the action of the board was of such a judicial character that its judgment could not be attacked in a collateral proceeding. The court said, quoting from the opinion of Chief Justice Kingman in *State Auditor v. Atchison, T. & S. F. R. Co.*, 6 Kan. 507: "The assessment of the property of the state, being then an incident to the taxing power which is wholly legislative, and not judicial, may well be ascertained by agents appointed under the law; but in no sense, under our constitution, can such agents be considered judicial officers. It is true that their duties require    of    them    judgment    and    discretion,    but

this is also true of most of the duties of ministerial and executive officers; but this does not make them judicial officers, nor constitute them courts, nor render their conclusions judicial acts." Then Justice Brewer says: "This was a case where the assessment made by the officers charged with this duty in the first instance was deemed too low by the state authorities, and an appeal was sought to be taken to this court under a statute expressly providing therefor. The order in question in this case is simply one of correcting the assessment roll. As such it is not a conclusive judicial determination. It is true, as suggested by counsel, that several such orders have been reviewed in this court upon proceedings in error. (*Lappin v. Board of Com'rs*, 6 Kan. 403; *Ross v. Commissioners*, 16 Kan. 411; *Hall v. Board of Com'rs*, 22 Kan. 37.) But this court considers, as a rule, only such questions as are presented by counsel, and in none of the three cases was any question presented as to the right to review the decisions below. * * We think the ruling of the district court upon the question was correct."

Under organic provisions identical with the terms of our Organic Act, it has been held in other Territories that the Legislature cannot confer judicial powers upon any boards, officers, or tribunals, nor can they exercise any such powers. (*Spencer v. Sully Co.*, 4 Dak. 474, 33 N. W. 97; *Rupert v. Board of Com'rs*, 2 Idaho, 21, 2 Pac. 718; *Hedges v. Commissioners*, [Mont.] 1 Pac. 748; *Ferris v. Higley*, 20 Wall. 375.)

The assessors and boards of equalization in this Territory have and can exercise no judicial functions. They are agencies of the legislative, and not of the judicial

branch of the government. As government agents they act ministerially, and while they, in fact, do exercise judgment in fixing values, it is not in that sense that makes their determinations *res adjudicata*, and conclusive. These boards are, in a sense, auditing boards, to adjust, equalize, and audit the several rolls so as to cause all localities and property to bear their equal and just burden of the public expense. Their action is not conclusive on the courts; and, while errors of judgment and irregularities will not render their acts void, or even voidable, equity will interpose to protect the rights of any taxpayer against whom an illgal assessment has been made, or an illegal tax been levied, when he shows that he has done that which equity requires of him who seeks equity. When part of a tax is illegal, and a part legal, and the legal can be separated from the illegal, a court of equity may enjoin that portion which is illegal. (*Taylor v. Thompson*, 42 Ill. 9; *Conway v. Township Board*, 15 Mich. 257; *Merrill v. Humphrey*, 24 Mich. 170; *Burlington & M. R. R. Co. v. Commissioners*, 7 Neb. 487; *Stiles v. City of Guthrie*, 3 Okl. 26, 41 Pac. 383; *Chicago, B. & Q. R. Co. v. Board of Com'rs of Atchison Co.* [Kan. Sup.] 39 Pac. 1039; *Pelton v. Bank*, 101 U. S. 143; *Cummings v. Bank, Id.* 153.)

When property is overvalued to such an extent as to raise the presumption that it was overestimated from design, a court of equity will determine the true valuation. (*City of Chicago v. Burtice*, 24 Ill. 489; *Knapp v. King Co.* [Wash.] 50 Pac. 480.)

Applying the rules deduced from the foregoing adjudications, we hold that the petition shows that the property of the plaintiffs in error was assessed at an excessive

valuation, and so excessive as to render the excess over the true cash value of the property illegal; and that, as no remedy is provided by the revenue laws for relief in such cases, the courts are given jurisdiction to hear such complaints and ascertain the true cash value of the property assessed, and to enjoin the collection of the taxes on the excess.

We do not consider the allegations of fraud in the petition as worthy of extended consideration. Fraud cannot be pleaded by alleging conclusions. The facts constituting the fraud must be specifically set forth, in order that the court may determine the sufficiency of such acts to constitute fraud. It is no sufficient charge of fraud that the board of county commissioners have contracted illegal debts which they are desirous of raising funds to pay. The levy of taxes is for the purpose of raising revenues to meet the current expenses of the county and subordinate municipalities. If an excessive levy is made, and more funds are raised than are required for legitimate expenses, a court of equity will, on proper application and showing, enjoin the payment of illegal indebtedness, but will not enjoin the collection of county revenues on the uncertain and speculative allegation that the board will, if they collect the revenues, misapply them. (*City of Olympia v. Stevens*, [Wash.] 47 Pac. 11; *Town of Lemont v. Singer & T. Stone Co.* 98 Ill. 94.)

Nor will a court cripple the municipal government by enjoining collection of her revenues for the reason that she has created obligations in excess of the 4 per cent. limit, fixed by act of congress on the powers of territorial municipalities. Something more must be shown. It must be made to clearly appear that the amount of

the liabilities, the assessed valuation for revenue pur-
poses at the time the several obligations were created or
imposed, the assets of the county, the purposes for which
the obligations were created, and all other facts neces-
sary to make it appear to the court clearly that such obli-
gations are void, and that the revenues claimed are not
required for other legitimate obligations and current ex-
penses. (*Maish v. Arizona*, 164 U. S. 599, 17 Sup. Ct.
193.)

The allegations of fraud consist mostly of conclusions
and speculations, and are insufficient. In the absence
of a clear showing to the contrary, it will be presumed
that the taxing officers acted in good faith, and with
honest motives.   The judgment of the district court
should be reversed, and the demurrer to the petition over-
ruled, and the defendants allowed to join issue on the
allegation of excessive valuation.   The plaintiffs will
have the burden of proving that  their property was
originally assessed by the township assessors at its true
cash value.   If they establish this fact, they are entitled
to have the tax based upon the excess of valuation en-
joined.

There is another question presented by this petition,
but not raised by the demurrer, which will probably arise
on the return of the case to the district court.   There
are a large number of plaintiffs, each an individual tax-
payer, owning separate and individual property, who
have joined as plaintiffs in this cause.   If their theory
had been correct that the action of the county board of
equalization was void because of the fact that in equal-
izing the rolls for that year they thereby increased the
aggregate assessment of the county, then the entire

amount of raise would have been void, and all the plaintiffs would have been similarly affected, and might have joined in a suit to enjoin the tax levied against such raise in the valuation. But as we have held that the board acted within the scope of its powers in adopting the method of equalizing the township rolls which was followed in this instance, and that there was no illegality in said method, a very different question is presented. On the allegations in the petition each plaintiff must make proof as to his own individual property, and no other plaintiff has any interest in such case. Each must present a separate issue, and a separate judgment must be rendered as to the assessment of each plaintiff. It was never intended that persons so situated should become joint plaintiffs. It may result on the trial of the cause that the property of any number of the plaintiffs has been assessed too low by the assessors, and that the valuation fixed by the board is not excessive, and it may result that others are too high, and the assessors' returns will have to be adopted. There can be no unity of interest where a general judgment cannot be rendered operating on all alike.

This question was before the supreme court of Kansas in the case of *Hudson v. Commissioners*, 12 Kan. 140. Hudson and Johnson were each owners in his own right of certain shares of stock in a building and loan association. They were each assessed on his stock, and the board of equalization raised the assessment. They brought a joint suit to enjoin the tax. The court said: "Are the plaintiffs entitled to sue jointly in this action? We think not. Their actions, if they have any, are several, and not joint. It is the several stock of each, and not the joint stock of both, that has been taxed in this case. The

plaintiffs have no joint interest in common in the matter. It can make no difference to Hudson how much Johnson is taxed on his ten shares of stock, nor to Johnson how much Hudson is taxed on his three shares of stock. Their interests are entirely separate and distinct. It is true, the questions involved in the two cases are precisely alike; but the similarity of the questions involved in two or more cases, whether of law or fact, or both, never was a sufficient foundation for a joint suit by two or more plaintiffs. The joint or common interest of the plaintiffs, necessary to enable them to sue jointly, must be in the subject matter of the action, and not merely in the legal questions involved in their separate causes of action. We suppose it will be admitted that, except for the statute, the plaintiffs could not maintain this action, nor any joint action, to restrain the collection of taxes severally assessed against them But it is claimed that section 253 of the Civil Code authorizes such an action. Said section reads as follows (section 4143, St. Okl. 1893): 'An injunction may be granted to enjoin the illegal levy of any tax, charge, or assessment, or the collection of any illegal tax, charge, or assessment, or any proceeding to enforce the same; and any number of persons whose property is affected by a tax or assessment so levied, may unite in the petition filed to obtain such injunction.' This is the only section of the statute that is supposed to give to the plaintiffs any right to sue jointly in an action like this. This section gives to every man a right to enjoin any illegal tax that may be assessed against him, whether the tax affects his property only, or his and others. And it gives to all persons whose property is affected by the same illegal tax the right to unite in the action to enjoin

such tax. But it does not give the right to two persons to unite in an action to enjoin two illegal taxes, severally assessed against each of them. Where a tax is illegal in the abstract, illegal in and of itself—illegal, as applied to every owner of taxable property in the county or district—then every person who has property affected by such illegal tax, or so many of them as may choose, may unite in an action to restrain the collection of such tax. Thus, where a tax is levied to pay interest on illegal bonds, (*Wyandotte & K. C. Bridge Co. v. Board of Com'rs of Wyandotte County*, 10 Kan. 326,) or to pay illegal street assessments, (*Gilmore v. Fox, Id.* 509.) all persons whose property may be affected by such tax, or so many of them as choose, may unite in an action to enjoin the same, for the tax, as a tax, is illegal. But when the tax, as a tax, is valid—as, for instance, an ordinary county tax, or state tax, or school tax—but becomes illegal only as applied to particular persons or property, or to particular cases, then each person severally intersted must sue alone. * * The statute authorizes a joint suit only when the property of the different plaintiffs is affected by the same illegal tax, and not when their separate property is affected by different illegal taxes."

This case is approved in *Stiles v. City of Guthrie*, 3 Okl. 26, 41 Pac. 383, and is the law of this Territory. The question of misjoinder of parties if properly raised, will result in each plaintiff being required to file his separate petition, and have his case docketed and tried separately. But the manner of disposing of this question we leave to the parties and the district court to deal with. The judgment of the district court is reversed, and cause remanded, with directions to the district court to over-

rule the demurrer, and proceed in accordance with this opinion.

Tarsney, J., having presided in the court below, not sitting; Burwell, J., and Hainer, J., concurring; McAtee, J., dissenting.