Earlene B. FANNING, Plaintiff,

v.

The SCHOOL BOARD OF INDEPEND-
ENT SCHOOL DISTRICT #23 OF JEF-
FERSON COUNTY, STATE OF OKLA-
HOMA, et al., Defendants.

No. CIV-73-842-B.

United States District Court,
W. D. Oklahoma.

May 8, 1975.

Lana Jeanne Tyree of Benefield, Shel-
ton, Lee, Wilson & Tyree, Oklahoma City,

and Jerome Sullivan, Jr., Duncan, Okl., for plaintiff, Earlene B. Fanning.

Larry L. French of Edwards & French, Seminole, Okl., for defendant, The School Board of Independent School District #23 of Jefferson County, State of Oklahoma.

Elliott C. Fenton of Fenton, Fenton, Smith, Reneau & Moon, Oklahoma City, Okl., for defendants, Warren E. Adams and Eugene Miller.

Earl D. Mills and David W. Edmonds of Foliart, Mills & Niemeyer, Oklahoma City, Okl., and Joseph M. Culp of Fischl, Culp, McMillin & Kern, Ardmore, Okl., for defendant, Richard D. Stone.

## MEMORANDUM OPINION

BOHANON, District Judge.

The present action is brought by a schoolteacher formerly employed by Independent School District #23 of Jefferson County, State of Oklahoma. The plaintiff's suit is an aggregation of claims which has as its core alleged violations of the Civil Rights Act, 42 U.S.C. §§ 1983, 1985, 1986 and 1988, with jurisdiction stemming from 28 U.S.C. § 1343. Plaintiff has also alleged jurisdiction under 28 U.S.C. § 1331, seemingly to ensure that those defendants, if any, not within § 1983 and hence not within § 1343, would be within the federal question jurisdiction of the Court. In addition to the civil rights claim, plaintiff asserts claims of slander and invasion of privacy, being within the pendent jurisdiction of the Court. Both the state of the pleadings and the state of the existing law have rendered complex an analysis and resolution of the issues.

The plaintiff has alleged in her Complaint and stated by deposition submitted for consideration of the Court: That she was employed by Independent School District #23 in August of 1970 as an elementary schoolteacher at the Central Elementary School in Waurika, Oklahoma. That the school is created, funded and operated pursuant to statutes enacted by the State of Oklahoma. That the plaintiff taught at that school until the end of school year 1972–73 and during the initial part of that period had only some limited difficulties in the performance of her job. However, in February, 1973, the plaintiff contacted the Oklahoma Education Association (OEA) concerning the establishment of a chapter of Association of Classroom Teachers (ACT). That she stated to the OEA the need for such a chapter and ascribed the need to internal school matters and problems which the plaintiff felt could best be protected against by organization of the teachers. Further, that plaintiff had not communicated her concerns to any school administrators or to the School Board as a whole, or to the general public. Plaintiff asserted that she was merely a member of a group of teachers which felt that problems existed.

The plaintiff further alleged and stated: That during this same month of February the plaintiff had a meeting and conversation with defendants Adams, the Superintendent of Schools, and Miller, the Principal of Central. That during this conversation plaintiff was made aware of the fact that defendant Adams had been apprised of the problems related to OEA by the plaintiff. That there were then statements made relating to plaintiff's status as a non-tenured teacher under the laws of Oklahoma and the pending renewal of her teaching contract. That this conversation was tape recorded without plaintiff's knowledge and subsequently played at a school board meeting wherein plaintiff's contract was not renewed. That on March 3 plaintiff received a written evaluation of her job performance which was unsatisfactory to her, after which she learned her teaching contract was not being renewed, and that plaintiff thereafter attended the Board meeting held March 5, her attendance being for the purpose of refuting her evaluation and non-renewal. That plaintiff presented written and oral statements at the meeting, receiving no

response or further hearing from the Board. That a number of Board meetings were held shortly thereafter, with defendant Stone stating at one such meeting, in response to a patron's query, that if people knew why plaintiff had not had her contract renewed, plaintiff's reputation would be destroyed.

The conclusion is inescapable that plaintiff has stated some cause of action based on these facts. The immediate question is whether such a cause is properly cognizable in a federal forum.

Procedurally, the cause is before the Court on defendants' motions to dismiss. All parties have offered depositions for the Court's consideration in rendering a determination. Taking *en masse* the motions to dismiss, the defendants have questioned whether the Court has subject-matter jurisdiction and whether the plaintiff has stated a federal claim. Since the distinction is well settled, Wheeldin v. Wheeler, 373 U.S. 647, 83 S.Ct. 1441, 10 L.Ed.2d 695 (1963), and the parties have offered depositions for consideration which, pursuant to Rule 12 (b) Fed.R.Civ.P., convert some of the Motions to Rule 56 Motions, the Court feels that its examination properly goes beyond the mere sufficiency of the pleadings. In this respect, the Court is faced with a situation somewhat analogous to that presented in Jr. C. of C., Rochester, Inc., N. Y. v. U. S. Jaycees, Tulsa, Okl., 495 F.2d 883, 886 (C.A.10, 1974), where the jurisdictional question is at best borderline, but the unclear dichotomy between the jurisdictional question and the question of considering the claim on the merits warrants a scrutiny of these merits. Therefore, the two questions before the Court are whether there is a substantial federal question stated and if so, whether there is any merit to the alleged federal cause of action, Baker v. Carr, 369 U.S. 186, 82 S.Ct. 691, 7 L.Ed.2d 663 (1962). The determination of the Court is that there is no substantial federal question presented and even if there were, this particular set of facts presents a situation where the proper course

for the Court is to abstain from deciding what are in their essential nature local questions which the state should resolve. Freeman v. Flake, 448 F.2d 258 (C.A. 10, 1971). An analysis of the underlying rationale in Perry v. Sindermann, 408 U.S. 593, 92 S.Ct. 2694, 33 L.Ed.2d 570 (1972) and Pickering v. Board of Education, 391 U.S. 563, 88 S.Ct. 1731, 20 L.Ed.2d 811 (1968) supports this conclusion.

I

*Federal Question Jurisdiction*

The plaintiff has in essence argued that the Court's power extends over the defendants through 28 U.S.C. § 1331 and that there is in fact a substantial federal question. It has been stated by various authorities that the purposes of federal jurisdiction, in those cases where there is concurrent jurisdiction with the state, are to promote uniformity in the construction of federal law and to ensure no prejudice of a federally created right, ALI, Division of Jurisdiction T.D. #3, 1965. Although these purposes have been subject to some criticism, they have been carried out by the courts' distinguishing between cases where the federal law or right is a direct and necessary element and cases where the mere possibility of a federal issue has surfaced. In these latter cases the courts have denied jurisdiction for such cases' failure to present a question substantially involving a dispute arising under the Constitution or laws of the United States. The analysis has rested on the substantiality of the particular question in itself and its substantiality in relation to the entire lawsuit. Thus, jurisdiction does not attach to a cause of action by any mechanical means or device, but does by the purposes of jurisdiction being invoked through the pleadings which present the facts and theories of the parties. The Court must ask itself in each instance what the exact dispute is.

The plaintiff here proposes the particular question: Does a decision of

the School Board to not renew a non-tenured teacher's contract, being based on the recommendations of school administrators, deprive her of rights arising under federal law if the administrators were improperly motivated? As to the School Board alone, there is, absent a due process challenge to 70 O.S. § 6–122 which is Oklahoma's tenure statute, clearly no substantial federal question. Questions which superficially seem directed at the Board either run afoul of the Board's Eleventh Amendment immunity as a political entity of the State, or in reality are imputable to an individual such as defendant Stone rather than the state. *See* Board of Regents v. Roth, 408 U.S. 564, 573, 92 S.Ct. 2701, 33 L.Ed.2d 548 (1972). Both the depositions filed and an Opinion of the Oklahoma Attorney General show the possibility of the Board's good-faith belief in the correctness of its action under 70 O.S. § 6–122. Additional questions directed to the Board revolve around plaintiff's rights in being renewed and whether she has a legitimate claim of entitlement equating with a due process liberty or property interest. Regardless of how plaintiff addresses herself, what is at issue is the Board's actions and Board of Regents v. Roth, *supra*, at 577, 92 S.Ct. 2701 points out the need to allow the State of Oklahoma to examine and consider its statutory scheme. *See* Perry v. Sindermann, *supra*, 601, 603, 92 S.Ct. 2694.

■ Therefore, the Court views this from a reading of the totality of the operative facts and allegations as a case arising under state law. *See* Gully v. First Nat'l Bank, 299 U.S. 109, 117, 57 S.Ct. 96, 81 L.Ed. 70 (1936); *cf.* Phillips Petroleum Co. v. Texaco, Inc., 415 U.S. 125, 94 S.Ct. 1002, 39 L.Ed.2d 209 (1974). There is no substantiality to the claim which is made only for jurisdictional purposes. *See* Jr. C. of C., Rochester, Inc., N. Y. v. U. S. Jaycees, Tulsa, Okl., *supra*. "When the complaint shows a case which arises out of a contract or a common-law right of property, and

only indirectly or remotely depends on federal law," the case is not one arising under the Constitution or laws of the United States, McGoon v. No. Pac. Ry. Co., 204 F. 998, 1005 (D.C.N.D., 1913), but because of the case's borderline nature, the merits of the case must also be considered.

## II

### Civil Rights Claim

■ It is well settled that the School Board is not a "person" within the meaning of § 1983 and therefore damages and injunctive relief are not available as against the School Board, Monroe v. Pape, 365 U.S. 167, 81 S.Ct. 473, 5 L.Ed. 2d 492 (1961) and City of Kenosha v. Bruno, 412 U.S. 507, 93 S.Ct. 2222, 37 L.Ed.2d 109 (1973). What other relief the plaintiff may be entitled to on these facts must fall within the same due process, state law "expectancy" as indicated above. By choosing to forego questioning the Constitutional sufficiency of 70 O.S. § 6–122, the plaintiff has not directly questioned the procedural due process and administrative procedures used by the Board, and as to such an indirect issue the State, as the real party in interest, should have its opportunity to act in this matter of the Board.

■ The plaintiff's most efficacious allegations are those involving civil rights violations by defendants Adams and Miller. At first blush, what appears to be at issue is § 1983 and the acts of those operating under color of state authority, where there may exist some claim of official privilege. As the Tenth Circuit has said, "there is a collision between the doctrine of official privilege, and section 1983 of the Civil Rights Act," Smith v. Losee, 485 F.2d 334 (C.A.10, 1973). While *Smith* is comprehensive, it does not deal with two matters which are of primary significance here. First, Adams and Miller, while cloaked with only some degree of immunity, are not members of the School Board. They

have only the power to recommend and not the power to decide. The fact that the Board scrutinizes these recommendations is in itself a safeguard of plaintiff's rights. This distinct power of the administrator to submit an adverse recommendation has always been recognized as the zenith of discretion, which is why it is merely a recommendation. If the Board has not renewed a contract because of the administrator's recommendation which is based on an impermissible intent, then the primary failure is that of the Board in not doing what it was established to do, since only the Board has the power to decide on continuing employment.

Second, the tenure statute which the Oklahoma legislature has seen fit to enact vests the local Board, with its power to decide, with as much discretion as the State can give, but for only a limited period of three years. Therefore, even a suit against the administrators ultimately comes to rest on the shoulders of the School Board and of the statute enacted for the purpose of local discretion and local autonomy. It is these basic considerations which underlie some of the jurisprudence enunciated in cases such as Pickering v. Board of Education, *supra*; Tinker v. Des Moines Independent Community School District, 393 U.S. 503, 89 S.Ct. 733, 21 L.Ed.2d 731 (1969); and Wood v. Strickland, 420 U.S. 308, 95 S. Ct. 992, 43 L.Ed.2d 214 (1975). Where suit is directed against the Board itself, there may be valid state interests which outweigh the constitutional rights of the individual, and the Board's discretion is what gives it the power to evaluate a full spectrum of state interests which have been delegated to the immediate locale of the schools. Where suit is directed against individual Board members, as is not the case here, the common-law tradition and public policy of a qualified good-faith immunity may be raised if there has been compliance with the standards of conduct established by statutes and case law. The Board may act only in furtherance of legitimate

state interests and cannot fail to renew by predicating its decision on the teacher's exercise of free speech. The individual Board member's actions must be based on permissible intentions and on knowledge of the basic, unquestioned constitutional rights of those whom the member affects in his official capacity.

Because of these considerations and the procedural status of the case, the Court takes cognizance of the defendants' position that plaintiff was not renewed because of her job performance. This, the Court believes, supports its determination and brings the matter, even in light most favorable to plaintiff, squarely into the *Pickering* context, where there is to be some balancing of plaintiff's First Amendment rights as against the School Board and State's interest in limiting plaintiff's expression because it interferes with school administration.

First Amendment rights are not so clear-cut and do require some balancing, which militates for the provincial forum having some opportunity to examine local problems. A combination of these and other factors necessitates a local scrutiny of local matters which this Court believes it should be slow in moving into. Freeman v. Flake, *supra*; Pickering v. Board of Education, *supra*; Note, 8 Geo.L.Rev. 901 (1974). Plaintiff's civil rights elements are viable and well understood in the forums of each of these United States.

The policy of abstention, or the Pullman Doctrine, was recently reviewed by the Supreme Court in Harris County Commissioners Court v. Moore, 420 U.S. 77, 95 S.Ct. 870, 43 L.Ed.2d 32 (1975). In that Opinion, Justice Marshall declared: "Among those cases that call most insistently for abstention are· those in which the federal constitutional challenge turns on a state statute the meaning of which is unclear under state law." This Court is of the opinion that Oklahoma's tenure statute is an integral part of this lawsuit. It was further stated in *Harris County*: " . . . when the

state law questions have concerned matters peculiarly within the province of the local courts . . . we have inclined toward abstention." This Court is of the further opinion that the actions of local school officials involving these types of issues are pre-eminently and peculiarly in the local province.

## III

### *Other Claims*

■ The slander and invasion of privacy allegations of plaintiff are not grounded on any federal claim. The slander claim is a separate cause of action which is related to plaintiff's basic civil rights claim only by time and place and does not derive from a common nucleus of operative fact. Hurn v. Oursler, 289 U.S. 238, 53 S.Ct. 586, 77 L.Ed. 1148 (1933). As to plaintiff's claim of invasion of privacy, such is within the nucleus of operative facts of the allegations. Were the Court to have exercised its jurisdiction, however, an application of the approach within United Mine Workers of America v. Gibbs, 383 U.S. 715, 86 S.Ct. 1130, 16 L.Ed.2d 218 (1966) would present the Court with a situation where its discretion should be exercised to abstain from deciding a tort question unknown to early common law and unenunciated in Oklahoma decisions. As Justice Brennan stated in United Mine Workers of America at 725, 726, 86 S.Ct. at 1138, 1139, "assuming substantiality of the federal issues, there is *power* in federal courts to hear the whole. . . . Needless decisions of state law should be avoided . . .. Certainly, if the federal claims are dismissed before trial, even though not insubstantial in a jurisdictional sense, the state claims should be dismissed as well." Thus it follows that the plaintiff's Complaint should be and is dismissed under the basic premise that the federal and state systems are not now unitary and will not be made so by mere desire to invoke a particular tribunal.

An appropriate Judgment will accordingly be entered herein.