655 F.2d 1016
 115 L.R.R.M. (BNA) 3484, 1 Indiv.Empl.Rts.Cas. 129
 Edaleen VINYARD, Plaintiff-Appellant,
v.
Robert J. KING, in his individual capacity and as
Administrator of the Clinton Regional Hospital, Eph Monroe,
Charles E. Engleman, Bud Miskel, Romney M. Chaffin, David
Stratton, individually and in their official capacities as
members of the Board of Directors of the Clinton Regional
Hospital, State of Oklahoma, their servants, agents,
representatives, assigns and successors, Defendants-Appellees.
 No. 80-1109.
 United States Court of Appeals,
Tenth Circuit.
 Argued May 14, 1981.
Decided July 23, 1981.
 
 1
 Stephen Jones, Enid, Okl. (James Craig Dodd, Enid, Okl., with him on the brief), for plaintiff-appellant.
 
 
 2
 H. Leonard Court, Oklahoma City, Okl. (Gary L. Betow, Oklahoma City, Okl., with him on the brief), of Crowe, Dunlevy, Thweatt, Swinford, Johnson & Burdick, Oklahoma City, Okl., for defendants-appellees.
 
 
 3
 Before BARRETT and LOGAN, Circuit Judges, and O'CONNOR, District Judge*.
 
 
 4
 O'CONNOR, District Judge.
 
 
 5
 Plaintiff brought this action pursuant to 42 U.S.C. § 1983 alleging that her due process rights were violated when her employment at Clinton Regional Hospital was terminated by defendants. Defendants include the hospital administrator and the members of the hospital board of directors. Upon motion by defendants, the district court abstained in accordance with the Pullman Doctrine stating that Oklahoma law was unclear with respect to the existence of plaintiff's claimed property interest in continued employment with the hospital.[1] The court below invoked the Pullman Doctrine to permit the state law issue to be litigated, thereby avoiding a premature decision on the constitutional questions presented. The sole issue before us is whether the district court properly abstained.
 
 
 6
 Plaintiff was hired as Director of Volunteer Services for Clinton Regional Hospital in November 1972 and worked in that position until her termination in January 1978. Although plaintiff concedes that she had no written or oral contract of employment for a specific number of years, she contends that Oklahoma law recognizes a general property right in employment in Nation v. Chism, 154 Okl. 50, 6 P.2d 766 (1931), and further, that she had an implied year-to-year contract with the hospital. The existence of an implied annual contract is based upon plaintiff's allegations (1) that she was not a probationary employee who could be terminated without cause or notice under the hospital rules, (2) that she had been employed at the hospital for five years, (3) that she received an annual salary, (4) that her job performance was reviewed annually, (5) that she received annual increases in salary, (6) that grievance procedures existed for the protection of non-probationary employees that were not followed in her termination, and (7) that she had given special consideration for her employment in the form of working long hours for low pay and sacrificing time that she would otherwise have spent with her invalid mother.
 
 
 7
 The District Court held that Nation v. Chism, supra, does not create a property interest for plaintiff under the circumstances of this case. The court then abstained "within the narrow exception known as the Pullman Doctrine where resolution of a federal constitutional issue is controlled by the interpretation of state law which is susceptible to a construction which would avoid or modify the necessity of a constitutional adjudication."[2] In support, the court relied upon a broad statement in the concurring opinion of Chief Justice Burger in Board of Regents v. Roth, 408 U.S. 564, 92 S.Ct. 2701, 33 L.Ed.2d 548 (1972), and Perry v. Sindermann, 408 U.S. 593, 92 S.Ct. 2694, 33 L.Ed.2d 570 (1972), wherein the Chief Justice suggested that abstention would be proper in cases involving nonrenewal of teacher contracts, if relevant state contract law is unclear. Reliance was also placed upon three Western District of Oklahoma cases dealing with teacher contracts that were not renewed. Smith v. Griffith, 437 F.Supp. 18 (W.D.Okl.1977); Summers v. Civis, 420 F.Supp. 993 (W.D.Okl.1976); and Fanning v. School Board of Independent School District # 23, 395 F.Supp. 18 (W.D.Okl.1975). Thereupon, plaintiff's claims were dismissed by the court without prejudice.[3]
 
 
 8
 Abstention pursuant to the Pullman Doctrine permits a federal court to stay its hand in those instances where a federal constitutional claim is premised on an unsettled question of state law, whose determination by the state court might avoid or modify the constitutional issue. Railroad Commission of Texas v. Pullman Co., 312 U.S. 496, 61 S.Ct. 643, 85 L.Ed. 971 (1941). The Supreme Court has consistently characterized abstention as
 
 
 9
 an extraordinary and narrow exception to the duty of a District Court to adjudicate a controversy properly before it. Abdication of the obligation to decide cases can be justified under this doctrine only in the exceptional circumstances where the order to the parties to repair to the State court would clearly serve an important countervailing interest. County of Allegheny v. Frank Mashuda Co., 360 U.S. 185, 188-189, 79 S.Ct. 1060, 1063, 3 L.Ed.2d 1163 (1959).
 
 
 10
 Colorado River Water Conservation District v. United States, 424 U.S. 800, 813, 96 S.Ct. 1236, 1244, 47 L.Ed.2d 483 (1976).
 
 
 11
 The mode of analysis to be applied by a district court when the issue of Pullman abstention arises was explained by the Third Circuit in D'Iorio v. County of Delaware, 592 F.2d 681, 686 (3d Cir. 1978), as follows:
 
 
 12
 The special circumstances generally prerequisite to the application of this doctrine are threefold. First, there must be uncertain issues of state law underlying the federal constitutional claims brought in the federal court. Second, these state law issues must be amenable to an interpretation by the state courts that would obviate the need for or substantially narrow the scope of the adjudication of the constitutional claims. And third, it must appear that an erroneous decision of state law by the federal court would be disruptive of important state policies. In addressing an abstention claim, a district court must first consider whether the particular case falls within the ambit of Pullman as defined by these criteria, and must then make a discretionary determination, based on the weight of these criteria and other relevant factors, as to whether abstention is in fact appropriate.
 
 
 13
 The sufficiency of a property interest triggering constitutional due process considerations is determined by state law. Bishop v. Wood, 426 U.S. 341, 344, 96 S.Ct. 2074, 2077, 48 L.Ed.2d 684 (1976). A person must have a legitimate claim of entitlement to have a property interest in a benefit; a mere unilateral expectation, abstract need or desire for the benefit is insufficient. Board of Regents v. Roth, supra, 408 U.S. at 577, 92 S.Ct. at 2709. In Perry v. Sindermann, supra, 408 U.S. at 601, 92 S.Ct. at 2699, the Court stated: "A person's interest in a benefit is a 'property' interest for due process purposes if there are such rules or mutually explicit understandings that support his claim of entitlement to the benefit and that he may invoke at a hearing."
 
 
 14
 The question of the clarity of state law is essentially legal in nature and our review is de novo. D'Iorio, supra, at 686. In the instant case, we are of the opinion that the state law of Oklahoma is not so unclear as to permit abstention.
 
 
 15
 We agree with the district court's view that Nation v. Chism, supra, does not recognize a general property right in employment under the circumstances of this case. The very broad language of Nation that purports to recognize such a right in employment cases is at most dicta. See Taylor v. State ex rel. Rutherford, 291 P.2d 1033 (Okl.1955). Furthermore, the state and federal courts in Oklahoma have given no indication that a general property right may arguably exist in teacher nonrenewal contract cases. Smith, supra; Summers, supra; Fanning, supra; King v. Board of Regents, Claremore Junior College, 541 P.2d 836 (Okl.1975).
 
 
 16
 Far more recently than Nation, the Oklahoma Supreme Court had occasion to speak to the issue of when an employee has a property right in employment. In Singh v. City Service Oil Co., 554 P.2d 1367 (Okl.1976), the United States District Court for the Northern District of Texas certified the following question: "Under Oklahoma law, does a hiring at a specified sum 'per year' dictate the duration of employment, or does such language merely connote the rate of compensation for an employment agreement which is otherwise terminable at will?" The Oklahoma court answered:
 
 
 17
 In the absence of facts and circumstances which indicate that an agreement is for a specific term, an employment contract which provides for an annual rate of compensation, but makes no provision as to the duration of the employment, is not a contract for one year, but is terminable at will by either party.
 
 
 18
 Without doubt, a property interest in employment can be created by an implied contract. Bishop, supra, 426 U.S. at 344, 96 S.Ct. at 2077. In Oklahoma, if there exist indicia that the agreement is for a specific term, then the employment contract is not terminable at will and the employee has a property right therein. The Singh court offers guidance in footnotes 2 and 3 by citations to cases stating that the presence of special circumstances can indicate a specific term of employment. Although the defendants contend that the cases cited offer insufficient guidance as to the state of the law in Oklahoma, one cannot expect the courts to have considered each of the infinite factual situations that could possibly arise.[4] In short, the difficulty in determining whether plaintiff in the case before us has a property right in employment exists not because of an unclear standard,[5] but because the precise set of facts posed here has not been addressed by the Oklahoma Supreme Court. We do not in any way minimize how difficult it may be to apply the law to the facts, but abstention is inappropriate on this basis. Under such circumstances the district court may not abdicate its duty to adjudicate the matter. See, e. g., Kusper v. Pontikes, 414 U.S. 51, 54-55, 94 S.Ct. 303, 306-307, 38 L.Ed.2d 260 (1973); Wisconsin v. Constantineau, 400 U.S. 433, 437-39, 91 S.Ct. 507, 510-511, 27 L.Ed.2d 515 (1971); Zwickler v. Koota, 389 U.S. 241, 250-251, 88 S.Ct. 391, 396-397, 19 L.Ed.2d 444 (1967).
 
 
 19
 Furthermore, even if Oklahoma law were unclear, no important state policies would be disrupted by an erroneous decision of the federal court. The appraisal of whether an erroneous federal court determination of state law would have a disruptive effect on state policies is more discretionary in character than the determination of the clarity of state law, "and greater deference will generally be accorded to a district court's appraisal if it is adequately explained." D'Iorio, supra, at 686. However, the case before us is not the usual Pullman abstention situation where the construction of a state statute or the authority of a state agency to promulgate a regulation is at issue. See Babbitt v. United Farm Workers National Union, 442 U.S. 289, 99 S.Ct. 2301, 60 L.Ed.2d 895 (1979); Bellotti v. Baird, 428 U.S. 132, 96 S.Ct. 2857, 49 L.Ed.2d 844 (1976); Carey v. Sugar, 425 U.S. 73, 96 S.Ct. 1208, 47 L.Ed.2d 587 (1976); Boehning v. Indiana State Employees Ass'n, Inc., 423 U.S. 6, 96 S.Ct. 168, 46 L.Ed.2d 148 (1975); Harris County Commissioners Court v. Moore, 420 U.S. 77, 95 S.Ct. 870, 43 L.Ed.2d 32 (1975); and cases cited in Field, Abstention in Constitutional Cases: The Scope of the Pullman Abstention Doctrine, 122 U.Pa.L.Rev. 1071 (1974).[6] Since a state statute or regulation inherently involves state interests to some degree, the considerations of comity and federalism underlying the Pullman Doctrine are immediately raised in an attack on the statute or regulation in federal court. In the case at bar, no statute or regulation is at issue and we must look elsewhere for possible interference with important state interests.
 
 
 20
 Although the trial court states in its order of abstention that consideration of the issues in this case "would entail a severe intrusion into a sensitive area of state law," we have difficulty in sharing that concern. The federal court is not treading upon hallowed state ground in determining the due process rights of a Director of Volunteer Services at a municipal hospital.[7] Abstention in this instance is unnecessary to avoid " 'needless friction' between federal pronouncements and state policies." Reetz v. Bozanich, 397 U.S. 82, 87, 90 S.Ct. 788, 790, 25 L.Ed.2d 68 (1970). In a very similar case alleging deprivation of due process in discharge from employment, the Third Circuit assumed that state law was unclear, but concluded that countervailing interests to the general obligation to decide cases properly before the court were not present. McKnight v. Southeastern Pennsylvania Transportation Authority, 583 F.2d 1229 (3d Cir. 1978). The court stated as follows:
 
 
 21
 (T)he question whether summary dismissal of an employee who has a property interest in not being dismissed "except for just cause" violates due process would not appear to be a difficult or novel one. Rather, it involves the application of settled principles to a clear fact pattern. Furthermore, such a determination would not upset sensitive state programs. The state would still be free to dismiss its employees; it would only have to afford them notice and an opportunity to be heard to the limited extent mandated by due process.
 
 
 22
 Id.
 
 
 23
 The case was remanded for other reasons with the suggestion that the district court consider the property interest issue. Id. In the case before us, as was true in McKnight, settled principles of law are applicable to the due process question once the property interest issue is resolved. A determination that plaintiff had a property interest and should have been afforded due process would not upset sensitive state programs. In addition, the facts of plaintiff's claim to a property right are peculiar to this plaintiff; no property right in employment for a large class of employees would be determined by state court resolution of the question under these particular facts. Rather, this case presents no more than a run-of-the-mill dispute over whether a particular set of facts arises to a property interest in employment under Oklahoma law.
 
 
 24
 Affirmance of the instant case would vastly expand the Pullman Doctrine by ignoring the limiting prerequisites of an unclear issue of state law and the potential disruption of important state policies. In the absence of these conditions, the issue before the district court in this civil rights action is analogous to the garden variety state law determinations that are inevitably involved in diversity of citizenship cases. See, Meredith v. City of Winter Haven, 320 U.S. 228, 64 S.Ct. 7, 88 L.Ed. 9 (1943). Under such circumstances the district court is fully competent to apply state law to the facts of the case before it and has a duty to do so.
 
 
 25
 While we have concluded that abstention is improper when state law is clear and when no important state policies would be disrupted by an erroneous application of state law by the federal court, we add the caveat that nothing said herein is to imply that we have reached the ultimate issue of whether plaintiff has a property interest in employment under state law.
 
 
 26
 REVERSED AND REMANDED for further proceedings consistent with this opinion.
 
 
 
 *
 Of the United States District Court for the District of Kansas, sitting by designation
 
 
 [1]
 Plaintiff also alleged below that the hospital administrator King told the local newspaper an erroneous reason for her dismissal that was subsequently published in a front page story. Accordingly, plaintiff contended that she was stigmatized by the publication and deprived of her right to liberty. The status of the liberty interest claim is not clear in the record and has not been raised on appeal. Therefore, we shall confine ourselves to the property interest claim and the trial court's decision to abstain
 
 
 [2]
 Contrary to the plaintiff's contention on appeal, we infer that the trial court did not ignore the plaintiff's theory of an implied year-to-year contract of employment. The court expressly recognized the implied contract theory in its order of abstention and at the motion hearing the theory was presented and argued in conjunction with the case upon which it is based, Singh v. City Service Oil Co., 554 P.2d 1367 (Okl.1976). Under these circumstances we can only conclude that the court abstained because state law remained unclear after Singh
 
 
 [3]
 The Supreme Court has noted that it is a better practice for a trial court invoking the Pullman Doctrine to retain jurisdiction, rather than to dismiss. Zwickler v. Koota, 389 U.S. 241, 244 n.4, 88 S.Ct. 391, 393 n.4, 19 L.Ed.2d 444 (1967). We have remanded Pullman type abstention cases in which the trial court had dismissed the action without prejudice so that the cases could be reinstated and held in abeyance pending resolution of state issues. Arrow v. Dow, 636 F.2d 287 (10th Cir. 1980); Western Food Plan, Inc. v. MacFarlane, 588 F.2d 778 (10th Cir. 1978)
 
 
 [4]
 Several of the cases touch on various aspects of the particular circumstances the plaintiff raises to establish that she has a property interest in employment. Garza v. United Child Care, 88 N.M. 30, 536 P.2d 1086 (N.M.App.1975), and Edwards v. Kentucky Utilities Co., 286 Ky. 341, 150 S.W.2d 916 (1941), address the effect of classification as a "permanent" employee. Edwards also states that the mere fact that an employee gave up other employment with seniority rights is not consideration moving from the employee to the employer in return for employment. Hindle v. Morrison Steel Co., 92 N.J.Super. 75, 223 A.2d 193 (N.J.App.1966) deals with the effect of yearly increases and bonuses. McKelvy v. Choctaw Cotton Oil Co., 52 Okl. 81, 152 P. 414 (1915), recognizes that the employment contract will not be considered terminable at will if the employee gave valuable consideration for the employment such as relinquishing a claim for personal injury damages against the employer
 In addition to the cases cited in footnotes 2 and 3 of Singh, an Oklahoma wrongful discharge case holds that an employee with an indefinite term employment contract containing a discharge for just cause clause was terminable at will. Freeman v. Chicago, Rhode Island & Pacific R.R. Co., 239 F.Supp. 661 (W.D.Okl.1965).
 
 
 [5]
 For an excellent discussion of the importance of a significant lack of clarity in state law, see Field, Abstention in Constitutional Cases: The Scope of the Pullman Abstention Doctrine, 122 U.Pa.L.Rev. 1071, 1090-93 (1974)
 
 
 [6]
 This is not to say that Pullman abstention is only appropriate when an unclear statute or regulation is at issue. The Supreme Court remanded an unclear question of state common law for certification to the state supreme court in Elkins v. Moreno, 435 U.S. 647, 662, 98 S.Ct. 1338, 1347, 55 L.Ed.2d 614 (1978). Abstention and use of certification procedures are grounded upon similar considerations. Bellotti v. Baird, 428 U.S. 132, 96 S.Ct. 2857, 49 L.Ed.2d 844 (1976)
 
 
 [7]
 On this basis the nonrenewal of nontenured teacher contract cases relied upon by the district court may be distinguished. Education has traditionally been an area in which the states have been given wide latitude in which to operate. Education is primarily a function of the state. Okla.Const. Art. 13, § 1; Tyron Dependent School District No. 125 of Lincoln County v. Carrier, 474 P.2d 131 (Okl.1970). The teacher cases are also distinguishable because state law was far less clear